**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RICO R. McCOY** | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **HARRIS COUNTY, TEXAS** a.k.a | § | |
| **HARRIS COUNTY SHERIFF'S** | § | |
| **DEPARTMENT; HARRIS COUNTY** | § | |
| **SHERIFF, SHERIFF ED GONZALEZ,** | § | |
| individually and in his official capacity; | § | **CIVIL ACTION NO:** |
| **DEPUTY CHRISTOPHER BOLIN,** | § | |
| individually and in his official capacity; | § | **___4:25-cv-135___** |
| **DEPUTY SHANE WYRICK,** | § | |
| individually and in his official capacity; | § | |
| **LONESTAR AUTO SERVICE (Sole** | § | |
| **Proprietorship),** individually and in its | § | |
| official capacity; **SEAN KAMIL,** | § | |
| individually and in his official capacity; | § | |
| **JOHN DOE EMPLOYEE OF** | § | |
| **LONESTAR AUTO SERVICE,** | § | |
| individually and in his official capacity | § | |
| **Respondents,** | § | |
| | § | |
| **All Jointly and Severally.** | § | |
| | § | |
| | § | |

---

**PETITIONER'S ORIGINAL COMPLAINT**

---

   **NOW COMES, Rico R. McCoy**, filing this Original Complaint and asserting a legal

action against Harris County, Texas, the Harris County Sheriff's Department, Deputy Bolin, and

Deputy Shane Wyrick all in their Official Capacities and their Individual Capacities. The

Respondents, jointly and severally, infringed upon Petitioner, Mr. Rico R. McCoy's rights as

guaranteed by the Constitution and the laws of the United States of America and the State of

Texas.

## I.    NATURE OF THE CASE

The Petitioner, Mr. McCoy, brings this lawsuit under 42 U.S.C. § 1983 and raising other United States Constitutional claims and supplemental state-law claims concerning the actions of the Respondents.  These claims include, but are not limited to unlawfully arresting, maliciously prosecuting, using excessive and unreasonable force, and violating Mr. McCoy's United States Constitutional rights

The actions and conduct of the Respondents, collectively and individually, all or in part, are the result of practices, policies, patterns, customs, and/or deliberate indifferences of the Respondents.

## II.    INTRODUCTION

1. Petitioner, RICO McCOY, individually brings this Federal Civil Action for damages against Respondents, HARRIS COUNTY a.k.a. HARRIS COUNTY SHERIFF'S DEPARTMENT, SHERIFF ED GONZALEZ, DEPUTY BOLIN, DEPUTY WYRICK, LONESTAR AUTO SERVICE, SEAN KAMIL, and JOHN DOE EMPLOYEE  for violating the Petitioner's Civil and Constitutional Rights under the First Amendment for using excessive force against the Petitioner when he used defiant speech that was not accompanied by conduct that manifested an intention to execute a threat; under the Fourth and Fourteenth Amendments, denying Equal Protection under the laws of the United States Constitution; and, under the Eighth Amendment for Petitioner's unlawful and wrongful arrest; ratification; deliberate indifference; false imprisonment; and assault.

## III.    JURISDICTION

2. This Court has federal jurisdiction pursuant to 28 U.S.C. 1331 – Federal Question, 1343 – Civil Rights, 42 U.S.C. 1983 and 1988, and the First, Fourth, Eighth, and Fourteenth

Amendments of the United States Constitution.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).

**IV.**    **VENUE**

3.  Venue is proper in this Court because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.  This lawsuit arises from actions executed by the Respondents which include the excessive retaliatory force used against the Petitioner as a result of his defiant speech, the unreasonable search and seizure of the Petitioner, the unlawful and wrongful arrest of the Petitioner, the denial of Equal Protection under the law, the failure to discipline deputies' use excessive and violative conduct, the pattern and practice of excessive force, particularly utilized against African-American men by a certain deputy, over a discreet period of time, and the ratification of the use of excessive force.

**V.**    **PARTIES**

4.  Petitioner, RICO R. McCOY is above the age of eighteen, and at the times relevant to this Complaint was a resident of Harris County, Texas.

5.  Respondent, HARRIS COUNTY a.k.a. HARRIS COUNTY SHERIFF'S DEPARTMENT is a municipal governmental entity located in Harris County of the State of Texas.  HARRIS COUNTY is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the "color of law".  HARRIS COUNTY may be served with citation through the Harris County Judge at 1001 Preston Street, Suite 911, Houston, Texas 77002, or wherever she/he may be found.

6.  Respondent, HARRIS COUNTY SHERIFF ED GONZALEZ ("Gonzalez") is the Harris County Sheriff and at all relevant times was acting under the "color of law" and as the agent,

and, as a matter of law, the official representative of the Harris County Sheriff's Department the County Sheriff.  His is sued in his official capacity for punitive and compensatory damages.  He can be served at the Harris County Sheriff's Department, located at 1200 Baker Street, Houston, Texas 77002, at his home, or wherever he may be found.

7.  Respondent, DEPUTY BOLIN ("Bolin") is/was employed by Harris County Sheriff's Department and at all relevant times was acting under the "color of law" and as the agent, and, as a matter of law, the official representative of the Harris County Sheriff's Department as a deputy.  His is sued in his official capacity for punitive and compensatory damages.  He can be served at the Harris County Sheriff's Department, located at 1200 Baker Street, Houston, Texas 77002, or wherever he may be found.

8.  Respondent, DEPUTY WYRICK ("Wyrick") is/was employed by Harris County Sheriff's Department and at all relevant times was acting under the "color of law" and as the agent, and, as a matter of law, the official representative of the Harris County Sheriff's Department as a deputy.  He is sued in his official capacity for punitive and compensatory damages.  He can be served at the Harris County Sheriff's Department, located at 1200 Baker Street, Houston, Texas 77002, or wherever he may be found.

9.  Respondent, LONESTAR AUTO SERVICE ("Lonestar") is a Sole Proprietorship, which provides auto towing services and was actively on the scene of this incident.  At all relevant times, LONESTAR was acting in its official capacity.  Lonestar is sued for punitive and compensatory damages for their role and damages caused in this incident.  Lonestar can be served at 17715 Clay Rd., Houston, Texas 77084.

10.  Respondent, SEAN KAMIL ("Kamil") is the owner of Lonestar.  At all relevant times, Kamil owned, operated, and controlled Lonestar and is an official representative of

Lonestar.  He is sued in his official and individual capacity for punitive and

compensatory damages for injuries and damages caused to Mr. McCoy in this incident.

Kamil can be served at 17715 Clay Rd., Houston, Texas 77084.

11. Respondent, JOHN DOE EMPLOYEE OF LONESTAR AUTO SERVICES ("John

Doe") is/was an employee of Lonestar.  At all relevant times, John Doe actively

participated and ratified the actions that gave rise to Mr. McCoy's the injuries and

damages he sustained.  John Doe is sued for punitive and compensatory damages for his

role and damages caused in this incident.  John Doe can be served at 17715 Clay Rd.,

Houston, Texas 77084.


The Petitioner will respectfully show this Honorable Court as follows:

## VI.    FACTS

12. On January 11th, 2023, at approximately 1:49 p.m., Mr. Rico McCoy was driving his

personal vehicle, traveling north-bound on Barker-Cypress Rd., in west Harris County,

Houston/Katy, Texas.

13. Mr. McCoy was in the left turning lane, as one of a few vehicles in line to turn left on to

Keith-Harrow Rd. ("Keith-Harrow") Mr. McCoy was at least the third vehicle in the line.

14. Respondent Wyrick was in his cruiser, approximately three (3) vehicles ahead of Mr.

McCoy, at the red-light, on Barker-Cypress Rd., ("Barker-Cypress") in a non-turning

lane at the Barker-Cypress/Keith-Harrow intersection.  Through Mr. McCoy's

observations, this indicated to him that Wyrick would proceed forward and not turn left

with the other vehicles, in the left-turning lane.

15. Mr. McCoy, feeling nervous and frightened due to a prior encounter with a Harris County Deputy, began recording the movements of the cruiser driven by Wyrick using his cell phone through the rear-view mirror.

16. Once the traffic light turned green, Mr. McCoy, along with the other vehicles in the left-hand turn lane, proceeded to make a left turn onto Keith Harrow.

17. Officer Wyrick then switched lanes and positioned his vehicle behind the last vehicle in the line of vehicles making the turn, allowing the other vehicles to proceed ahead without interference.

18. Mr. McCoy was then traveling in the right lane of Keith-Harrow and states that he maintained a speed slightly below the posted speed limit to ensure compliance with traffic laws and avoid any potential issues.

19. Wyrick moved his vehicle into the left-hand lane, positioning it alongside Mr. McCoy's vehicle on the driver's side.

20. Mr. McCoy subsequently reduced his speed, and Wyrick also slowed down.  When Mr. McCoy increased his speed, Officer Wyrick matched his pace.  Based on this pattern of behavior, Mr. McCoy believed he was being followed, racially profiled, and/or targeted by Wyrick.

21. McCoy's vehicle.  Wyrick did not turn on his flashers until Mr. McCoy began executing his turn.

22. Mr. McCoy began looking for a safe location to pull over and noticed the Cy-Fair Fire Department – Station 5, located at 17819 Keith-Harrow Road, Houston, Texas 77084, on his right-hand side.

23. He activated his turn signal to make a lawful right turn and entered the fire station's parking lot, where he brought his vehicle to a complete stop.

24. As Mr. McCoy was executing the turn into the fire station's parking lot, Wyrick activated the cruiser's emergency flashing lights and quickly moved into the right-hand lane behind Mr. McCoy's vehicle.

25. Notably, Wyrick did not activate his flashing lights until after Mr. McCoy initiated the turn.

26. Fearing for his safety, Mr. McCoy called 911 to create a record of the incident and requested that the dispatcher remain on the line until Wyrick departed. However, the dispatcher abruptly disconnected the call while Mr. McCoy was attempting to provide the requested location information. Mr. McCoy, unfamiliar with the street names in the area, was unable to complete the dispatcher's request.

27. Following this, Mr. McCoy immediately contacted his wife so she could listen to the interaction between him and Wyrick.

28. Shortly thereafter, Mr. McCoy observed another deputy, identified as Bolin, arrive at the scene simultaneously with a tow truck from Lonestar Auto Service. This sequence of events reinforced Mr. McCoy's belief that he was being followed, profiled, and/or targeted.

29. During this encounter, Mr. McCoy repeatedly requested the presence of a supervisor; however, his requests were not acknowledged or fulfilled.

30. At one point, Wyrick demanded that Mr. McCoy exit his vehicle, threatening to break the driver's side window and forcibly remove Mr. McCoy from the vehicle, allegedly in connection with a traffic violation.

31. Wyrick made a hand gesture directed toward an individual or individuals in the distance, signaling them to approach Mr. McCoy's vehicle.  At that time, Mr. McCoy was unaware of the presence of additional law enforcement vehicles or other individuals in the vicinity.

32. Shortly thereafter, Bolin approached Mr. McCoy's vehicle and ordered him to exit said vehicle, threatening to 'break' the window if he did not comply.

33. Bolin then wielded what appeared to be either a flashlight or a short baton.  He struck the vehicle's window with minimal force, presumably to show Mr. McCoy that he did not have an issue with breaking the window if he decided to do so.  Bolin also attempted to forcibly dislodge the window by pulling on it.

34. Through a small opening in the driver's side window, Mr. McCoy provided Wyrick and Bolin with his driver's license and proof of insurance.  Despite this, Bolin continued to threaten to break the vehicle's window while demanding that Mr. McCoy exit the vehicle. This use of threatening language and behavior occurred in connection with an alleged traffic violation, specifically the accusation of failing to execute a proper right turn.

35. Upon realizing that Mr. McCoy was recording the interaction, Wyrick and Bolin asserted that they would also cite him for allegedly operating an electronic device while driving a motor vehicle.

36. Fearing for his safety due to the escalating threats and conduct of Wyrick and Bolin, Mr. McCoy ultimately exited his vehicle.  He believed that had his repeated requests for a supervisor been honored, the situation could have been de-escalated, the appropriate traffic citations issued, and both parties could have resolved the matter without further conflict.

37. After Mr. McCoy opened his vehicle door and before he could unbuckle his seatbelt, his phone was knocked from his hand, and his head was forcibly pulled downward by either Wyrick or Bolin.  At that point, both Wyrick and Bolin began striking Mr. McCoy with closed fists, targeting his face and head.

38. Combined, Wyrick and Bolin delivered at least seven (7) closed-fist punches to Mr. McCoy's face and head, with Wyrick responsible for at least two (2) punches and Bolin delivering at least five (5). See Exhibit 1[1] and Exhibit 2[2] – cell phone and dashcam videos.

39. Once Mr. McCoy's seatbelt was dislodged by either Wyrick or Bolin, he was forcibly removed from his vehicle and thrown face-down on the parking lot pavement.

40. While the excessive and brutal use of force against Mr. McCoy continued, he observed an unidentified white male wearing red basketball shorts standing over him. This individual later became known as John Doe.  This individual physically assisted Wyrick and Bolin in restraining Mr. McCoy by placing his knee in Mr. McCoy's back and assisting in retraining and securing the handcuffs upon Mr. McCoy.

41. As a demonstration of Wyrick, Bolin, and John Doe's willingness to openly violate the law, they did not even attempt to recognize that Mr. McCoy had conceded to exit his vehicle.

42. Once handcuffed, Mr. McCoy was seated on the asphalt.  He observed either Wyrick or Bolin picking up his eyeglasses, which had fallen during the alleged excessive and unreasonable assault.  The officer then threw the eyeglasses into Mr. McCoy's vehicle.

---

[1] Exhibit 1 – Cell phone video of incident (to be filed with the Clerk of the Court, in person, on USB drive, no later than 10 business days after the filing of this suit).
[2] Exhibit 2 – Dash-Cam video of incident (to be filed with the Clerk of the Court, in person, on USB drive, no later than 10 business days after the filing of this suit).

When Mr. McCoy inquired about this action, the officer denied throwing the glasses into the vehicle and claimed not to know their location.

43. Before being placed inside the cruiser, Mr. McCoy asked for his eyeglasses again. The same Respondent (Wyrick or Bolin) who had previously denied knowledge of the glasses brought them to Mr. McCoy, stating they were found inside his car.

44. One of the Respondent deputies (Wyrick or Bolin) proceeded to turn off Mr. McCoy's cell phone video recording and terminated a call with Mr. McCoy's wife, despite Mr. McCoy's explicit request to keep the phone and recording active.

45. Subsequently, a sergeant arrived at the scene. Mr. McCoy requested to speak with the sergeant. Upon observing the sergeant's actions, Mr. McCoy noticed that the sergeant handed his body-worn camera to either Wyrick or Deputy before approaching him.

46. Mr. McCoy explicitly requested that the sergeant reattach and activate his body-worn camera before engaging in further conversation. While the sergeant later retrieved his bodycam, he refused to promptly return to speak with Mr. McCoy until much later.

47. As a result of the force used by Wyrick and Bolin, Mr. McCoy sustained multiple injuries, including broken teeth, a detached retina, and a concussion.

48. Approximately six (6) or more deputies, in addition to the sergeant, arrived at the scene. This significant law enforcement response was in all in connection with an alleged failure to properly execute a right turn.

49. Mr. McCoy was transported from the scene to the Emergency Room at Houston Methodist West, located on Interstate-10 in west Houston, for medical evaluation and treatment of his injuries.

50. Upon arrival at the emergency room, law enforcement personnel prohibited Mr. McCoy from contacting his wife, further restricting his communication.

51. Mr. McCoy sustained injuries as a result of the excessive force, deliberate indifference, assault, and false imprisonment which include broken teeth, detached retina, and a concussion.

52. The treatment of Mr. McCoy's injuries were not adequately addressed as he still has the broken teeth and vision issues.  This includes during his three and one-half months of incarceration following the arrest and visit to the emergency room.

53. Harris County Sheriff's Office have assembled special units for "proactive areas" which has given deputies a "free-pass" to harass, intimidate, target, and racially profile persons engaged in lawful conduct.  These special units have supervisors, and Gonzalez has delegated his duties to those supervisors.  These units, often referred to as "jump-out-boys" they operate with minimal oversight.

54. These special units are known to violate the constitutional rights of non-offending individuals and overwhelmingly, persons of color – particularly African-American males.

55. On October 10th, 2023, upon the conclusion of a jury trial, Mr. McCoy was found "Not Guilty" – a Judgement of Acquittal by Jury (Exhibit 3)[3] - for "resisting arrest" which all began with an alleged an improper right turn.  All charges were dismissed.

56. Harris County's policies and practices are the force behind Mr. McCoy's Connotational and Civil Rights being violated.

57. Gonzales is Harris County's policymaker for law enforcement, and County Judge Lina Hildago who ratifies these polices of the Harris County Sheriff's Department, both

---

[3] Judgement of Acquittal by Jury – Case No. 244040401010 – Exhibit 3

promote, adopt, and continue to ratify the unconstitutional conduct involving this unlawful arrest of Mr. McCoy, and so many others.

58. This unconstitutional conduct is a result of failure to train, failure to re-train, failure to supervise, and/or failure to discipline law enforcement officers that violate any written policies against unconstitutional conduct rendering the polices not policies at all.

59. Mr. McCoy's unlawful arrest, like others before and after him, is achieved by alleging certain, particular offenses such as resisting arrest, evading arrest, and interfering with public duties to name a few.  These types of offenses are, more often than not, officer-initiated –

meaning that these types of offenses do not require a third-party complaint or are achieved otherwise without a third-party and solely upon the officer's subjective or untruthful assessment.

60. As with Mr. McCoy's jury trial, the jury (as the finder of fact) was left to weigh the word of someone who has been painted as "bad" person against an officer who we, as citizens, are expected to implicitly trust.

61. Harris County and Gonzalez's practice of ratifying these unlawful arrests do so by failing to discipline deputies who engage in unconstitutional practices and failing to train its officers against the unlawful practices is systemic.

62. Here, Bolin has wrongfully arrested and assaulted at least three African-American men within the past two and one-half years.  Most are premised on a resisting arrest, interfering with public duties, or assaulting a peach officer.

63. In a decision entered in September 2023, it was found that Bolin – the Respondent who is the very same Respondent deputy in this matter) similarly used excessive force against

the Petitioner Williams, regarding a vehicular matter, which also occurred in a parking

lot. See generally, *Williams v. Bolin*, No.4:23-cv-00302, First Amended Complaint, Doc.

5, (S.D.T.X. filed on Feb. 23, 2023).

64. Harris County continues to ratify and promote the practice of failure to supervise arrests

made by their officers by condoning not only the patrol officers but also their supervising

sergeants of donning their recording devices before having conversations with them, as

what occurred with Mr. McCoy in this matter. See #45 and #46 above.

65. This brings another issue; Mr. McCoy was interrogated during this custodial situation, of

this continuing incident, and was not Mirandized.  Is this why the sergeant donned his

recording device before talking to Mr. McCoy?

66. Again, a failure on the part of Gonzalez.  Gonzalez is personally responsible and

accountable for the unconstitutional conduct of the County's deputies/officers by

allowing, condoning, and ratifying the unconstitutional conduct.

67. Over 40 examples of this conduct are clearly enumerated, with specificity, in a previous

lawsuit in which Bolin is one of the Respondents – the very same Bolin in this matter.

See *Williams v. Bolin*, No.4:23-cv-00302, First Amended Complaint, Doc. 5, at 11-40

(S.D.T.X. Feb. 23, 2023).

## VII.    CAUSES OF ACTION

### A.  42 U.S.C. §1983 — EXCESSIVE FORCE & FOURTH AMENDMENT VIOLATIONS

68. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs,

inclusive, with regard to all causes of action.

69. Petitioner sues Respondents Bolin and Wyrick Hart for the unlawful use of excessive force under 42 U.S.C. §1983.  To prevail in a claim under §1983, a Petitioner must prove

    a.  that his constitutional rights were violated, and

    b.  that the violation was caused by a person acting under color of law. _West v. Atkins_, 487 U.S. 4242 (1988).

70. Petitioner asserts that both Respondents Bolin and Wyrick used excessive and force in the course of their illegal seizure and arrest of Petitioner, a free citizen, in violation of the Fourth Amendment and its "reasonableness" standard.  To establish that the Respondents violated Petitioner's constitutional right to be free from excessive force, Petitioner must show:

    a.  an injury;

    b.  which resulted from the use of force that was clearly excessive to the need; and

    c.  the excessiveness of which was objectively unreasonable.  See _Rockwell v. Brown_, 664 F.3d 985, 991 (5th Cir. 2001).

        i.   The Petitioner suffered multiple injuries as a direct result of Respondents Bolin and Wyrick's unconstitutional, depravedly indifferent, brutal actions.  These injuries include but are not limited to broken teeth, detached retina, concussion, facial nerve damage, bruises and abrasions – all of which resulted in medical bills, pain and suffering, loss of use, at times continued extreme pain due to tooth nerve exposure, and other general and special damages.

        ii.  Respondents Bolin and Wyrick's actions were clearly excessive to the need.

---

1. Mr. McCoy pulled into a parking lot, only to then be "pulled over" by Wyrick for allegedly not making a proper right turn, which is a non-violent crime.

2. Upon Bolin and Wyrick threatening harm to both Mr. McCoy's property and person, he conceded to exit his vehicle

3. Bolin and Wyrick did then both pull Mr. McCoy from his vehicle, while he was still restrained by his seatbelt, land at least seven (7) direct, closed fist punches to Mr. McCoy's face and head all before he was released from his vehicle's seatbelt.

4. Mr. McCoy was then restrained not only by Bolin and Wyrick but also by John Doe the tow truck driver – exasperating Mr. McCoy's injuries.

5. If Mr. McCoy were found guilty of both items 1 and 2 above, these crimes are misdemeanor crimes which do not justify the use of excessive force.

6. If Respondents Wyrick and Bolin believed that the detention of Mr. McCoy was necessary, they could have used other means to deescalate and detain Mr. McCoy.  This would include non-brutal means.  The video evidence[4] shows that Bolin and Wyrick used excessive force upon forcibly dislodging Mr. McCoy from his vehicle.

---

[4] Exhibit 1 – Cell phone video of incident (to be filed with the Clerk of the Court, in person, on USB drive, no later than 10 business days after the filing of this suit).
[4] Exhibit 2 – Dash-Cam video of incident (to be filed with the Clerk of the Court, in person, on USB drive, no later than 10 business days after the filing of this suit).

       7. Regardless of Bolin and Wyrick's subjective reasonableness, the necessity for at least seven (7) closed fist punches to Mr. McCoy's face and head was clearly excessive to any possible need.

   iii. The excessiveness of the force used by Bolin and Wyrick was objectively unreasonable.

       1. Mr. McCoy conceded to exit his vehicle, showing his hands at all possible times. Mr. McCoy was suspected of a non-violent Class C misdemeanor. Bolin and Wyrick did not even provide Mr. McCoy with an opportunity to release his seatbelt and then they proceeded to violently dislodge Mr. McCoy from his vehicle. This was accompanied with at least seven (7) closed fist punches to Mr. McCoy's face and head.

       2. Bolin and Wyrick never alleged that Mr. McCoy was dangerous or armed. Therefore, the use of the brutal, excessive force was objectively unreasonable.

   iv. Wyrick and Bolin were acting under the color of law because, at the time of this incident, they were purporting to act within the scope of the employment and duties with the Harris County Sheriff's Department and with the authority provided by the Department.

71. Therefore, considering items (c)(i) through (c)(iv), in the light most favorable to the Petitioner, Respondents Bolin and Wyrick's actions satisfy all of the elements of an excessive force claim under 42 U.S.C. §1983.

**B. 42 USC §1983 — NO QUALIFIED IMMUNITY**

72. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

73. Respondents Bolin and Wyrick t may claim that they are entitled to qualified immunity against a 42 U.S.C. §1983 claim.  In _Saucier v. Katz_, 533 U.S. 194 (2001), the Supreme Court established a two-part test for determining whether or not qualified immunity applies: a) do the facts indicate that a constitutional right has been violated, and b) was that right clearly established at the time of the alleged conduct.  When such a right has been violated, qualified immunity does not apply.  _Id._

   a.  The facts of this incident indicate that Bolin and Wyrick violated Mr. McCoy's Fourth Amendment right against unreasonable seizure.  A clear beat-down, with at least seven (7) closed fist punches to Mr. McCoy's (a free citizen) face and head is a "seizure" governed by the objective reasonableness standard of the Fourth Amendment.  Bolin and Wyrick landed those punches while Mr. McCoy was restrained and had further conceded to exiting his vehicle.  Mr. McCoy, who was not visibly armed, while only suspected of a minor non-violent traffic violation, and having no reasonable basis to suspect that Mr. McCoy was an imminent threat to anyone, Bolin and Wyrick still chose to beat Mr. McCoy in the face with least seven (7) closed fist punches to Mr. McCoy's face and head, causing likely irreparable injuries.

   b.  The right of Mr. McCoy to not be physically beaten in the face and head by law enforcement when he posed no threat to anyone is clearly established and had been for nearly 40 years at the time of this incident.  See, e.g., _Tennessee v. Garner_, 471 U.S. 1 (1985).  The central concept is that of "fair warning": The law

can clearly be established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." _Hope v. Pelzer_, 536 U.S. 730 at 740 (internal quotation marks omitted); see also _Kinney v. Weaver_, 367 F.3d 337, 350 (5th Cir. 2004) (en banc; holding that a clearly established law is one where a prior decision provided reasonable warning that the conduct violated federal law). Here, the threat of harm to Mr. McCoy's personal property and his person was enough for him to concede to exit his vehicle. There was no warning given by neither Bolin nor Wyrick that Mr. McCoy was also going to receive a beat-down.

74. To further support _No Qualified Immunity_, Honorable Judge Rosenthal of the United States District Court, Texas Southern District issued the following on September 26, 2023, in _Williams v. Bolin_, 694 F. Supp. 3d 904 (S.D. Tex. 2023).

> "**B. Qualified Immunity**
>
> "Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." _Garcia v. Blevins_, 957 F.3d 596, 600 (5th Cir. 2020) (quoting _Cass v. City of Abilene_, 814 F.3d 721, 728 (5th Cir. 2016)); see also _Pearson v. Callahan_, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). When a defendant invokes qualified immunity, "the burden shifts to the plaintiff to show that the defense is not available." _Cooper v. Brown_, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted).
>
> "A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional *912 right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011); see also *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

"The first prong requires the plaintiff to point to facts that could support a finding of a constitutional rights violation. *Pearson*, 555 U.S. at 232, 129 S.Ct. 808. The second prong requires the plaintiff to show that " 'the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' " *Tolan v. Cotton,* 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014)(alterations in original) (citation omitted). In other words, "[t]o defeat qualified immunity, a plaintiff must demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Shumpert*, 905 F.3d at 321 (emphasis omitted) (quoting *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc)). "In determining what constitutes clearly established law, th[e] court first looks to Supreme Court precedent and then [to Fifth Circuit precedent]. If there is no directly controlling authority, [the] court may rely on decisions from other circuits to the extent that they constitute 'a robust consensus of cases of persuasive authority.' " *Shumpert*, 905 F.3d at 320 (citations omitted).

"At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only

those facts needed to rule on the immunity claim." _Zapata v. Melson_, 750
F.3d 481, 485 (5th Cir. 2014) (emphasis omitted) (citations and internal
quotation marks omitted).

**"III.  Analysis**

A. Deputy Bolin and Deputy Kerrigan

"Mr. Williams brings claims against Deputies Bolin and Kerrigan for
excessive force, unlawful seizure, equal protection, and interference with
family relationships. The deputies argue that Mr. Williams has failed to
state a claim. In addition, they argue that any claim is barred by qualified
immunity.

**"1.  The Excessive Force Claim**

"To establish an excessive use of force claim, a plaintiff must demonstrate
'(1) an injury (2) which resulted directly and only from the use of force
that was excessive to the need and (3) the force used was objectively
unreasonable.' " _Lockett v. New Orleans City_, 607 F.3d 992, 999 (5th Cir.
2010) (quoting _Glenn v. City of Tyler_, 242 F.3d 307, 314 (5th Cir. 2001)).
When evaluated whether officers used excessive force, the court must pay
"careful attention to the facts and circumstances of each particular case[.]"
_Graham v. Connor_, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443
(1989). These facts and circumstances include "the severity of the crime at
issue, whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he is actively resisting arrest or attempting
to evade arrest by flight." _Id_. *913

The deputies argue that the force used was reasonable because Mr.
Williams "was parked over the line of his parking spot" and "assertively
respond[ed]" to Deputy Bolin. (Docket Entry No. 18 at ¶ 16). The deputies
also point to Deputy Bolin's statement to Mr. Williams to "stop pushing

off the truck," and state that Deputy Bolin had mistaken Mr. Williams for another person. (*Id.*).

"Mr. Williams alleges that he had at most committed a minor parking violation. He alleges that was not resisting arrest or making any attempt to flee from the officers. He explicitly alleges that he was not resisting, notwithstanding Deputy Bolin's direction to "stop pushing off the truck." Nothing in the amended complaint or the deputies' motion to dismiss provides information about the man for whom Deputy Bolin allegedly mistook Mr. Williams. Mr. Williams's "assertive[ ] respon[se]" to a deputy that he wished to leave and had committed no crime is not an allegation that Mr. Williams resisted. In the body-worn camera footage, Mr. Williams does not resist being placed in handcuffs and he does not appear to resist being placed in the squad car. The defendant officers' supplemental brief about the body-worn camera footage describes Mr. Williams as "passively resist[ing]." (Docket Entry No. 32 at 2; Docket Entry No. 32-6). Even if the court construed Mr. Williams's response as passive resistance, that would not justify the officers' immediate use of physical force. *Joseph v. Bartlett*, 981 F.3d 319, 333 (5th Cir. 2020) ("As to a passively resisting suspect, an officer does not take measured and ascending action by immediately resort[ing] to taser and nightstick without attempting to use physical skill, negotiation, or even commands." (internal quotation marks and citation omitted)); see also *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (stating that "force is not justified" for passive resistance).

Mr. Williams alleges that **Deputy Kerrigan "punched him with a closed fist multiple times" while Deputy Bolin assisted** [Emphasis added]. (Docket Entry No. 5 at ¶ 29). The body-worn camera footage does not clearly contradict Mr. Williams's allegations. (Docket Entry Nos. 32-6, 32-7). ***In a similar case in which law enforcement hit the plaintiff once***

*during a traffic stop in response to passive resistance, the court held that "a reasonable officer on the scene would have known that suddenly resorting to physical force as Officer Rogers did would be clearly excessive and clearly unreasonable."* [Emphasis added] *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017).

This is not the first excessive force claim arising from police actions taken in response to an improperly parked car. In *Vardeman v. City of Houston*, 55 F.4th 1045 (5th Cir. 2022), the plaintiff sued after he was struck by an airport police traffic officer for failing to immediately move his car in response to officer instructions. Id. at 1048-49. The panel unanimously held that these allegations stated a claim for excessive force under the Fourth Amendment. Id. at 1052. The allegations in the amended complaint are sufficient to plead that **the force Deputies Bolin and Kerrigan used was objectively unreasonable.** [Emphasis added]

"Although *Vardeman* was decided after the incident at issue, the applicable law was "clearly established," *Joseph*, 981 F.3d at 336, at the time. The Fifth Circuit had held that when "an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive." *Hanks*, 853 F.3d at 748 (5th Cir. 2017). Similarly, in *Bush v. Strain*, 513 *914 F.3d 492 (5th Cir. 2008), the court found that officers were not entitled to qualified immunity when they "forcefully slam[med] [the plaintiff's] face into a vehicle while she was restrained" in handcuffs. *Id.* at 501-02. The court has also held that repeatedly striking a person with a baton and tasing him in the face of only verbal resistance to the officer's conduct in conducting a pat-down related to a traffic violation, is excessive. *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); see id. at 763-64 ("Qualified immunity will not protect

officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

"Mr. Williams at most committed a minor traffic offense. The body-worn camera footage shows that he did not physically or verbally threaten the deputies or others and did not attempt to flee. The deputies had sufficient notice that punching a handcuffed Mr. Williams constituted excessive force and a violation of Mr. Williams's constitutional rights. *Aguirre v. City of San Antonio*, 995 F.3d 395, 415 (5th Cir. 2021)(internal quotation marks and citations omitted)("The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."). Mr. Williams has pleaded facts that, if proven, may show that the force used was unreasonably excessive so that Deputies Kerrigan and Bolin would not be entitled to qualified immunity. The record shows factual disputes that need discovery to determine whether qualified immunity is appropriate, or not. Those disputes preclude the court from determining on this record whether the deputies are, or are not, entitled to qualified immunity. The deputies may reassert the qualified immunity defense at summary judgment when a fuller record is available.

**"2. The Unlawful Arrest Claim**

It is clearly established that a person has the constitutional right not to be arrested without a warrant or probable cause to believe that he is committing an offense. *Gerstein v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); see also *Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The deputies had no warrant. But unlawfully parking in a handicapped spot exposes a person to misdemeanor charges. TEX. TRANSP. CODE § 681.011(g). So too does

failure to register a vehicle. Id. § 502.472; see also id. § 502.471(c) ("Unless otherwise specified, an offense under this section is a misdemeanor[.]"). Although Mr. Williams now denies that his car protruded into the handicapped space, (Docket Entry No. 37 at 5), the video shows his truck parked a few inches over the line into the handicapped parking space, (Docket Entry No. 32-6), and his complaint acknowledges the same (Docket Entry No. 5 at ¶ 21). Mr. Williams does not dispute that his vehicle was unregistered. The record shows that the officers had probable cause to arrest Mr. Williams. The unlawful arrest claim is dismissed.

### "3. The Equal Protection Claims

Mr. Williams claims that the defendants violated his equal protection rights. This claim appears to be based on the deputies' differential treatment of Mr. Williams compared to another driver whose vehicle was also parked to intrude into the adjacent handicapped parking space. (Docket Entry No. 5 at ¶ 36). Mr. Williams argues that this differential treatment demonstrates discriminatory intent. (Id. (referring *915 to Deputy Bolin's "ulterior racial motives")).

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." _Johnson v. Morel_, 876 F.2d 477, 479 (5th Cir. 1989), abrogated on other grounds by _Harper v. Harris County_, 21 F.3d 597 (5th Cir. 1994)(citing _Washington v. Davis_, 426 U.S. 229, 247-48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). " [O]fficial action will not be held unconstitutional solely because it results in racially disproportionate impact …Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

"Mr. Williams's claims against the deputies are for selective enforcement. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." _Allred's Produce v. U.S. Dep't of Agric._, 178 F.3d 743, 748 (5th Cir. 1999) (quoting _Oyler v. Boles_, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). The plaintiff must show "that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " _Id_.

Mr. Williams alleges that he is a Black man, but he does not allege the race of the driver of the other car. Mr. Williams alleges that there was a white male who approached Deputy Bolin to ask him to move his squad car. (Docket Entry No. 5 at ¶ 35). He also alleges that "another vehicle was parked on the other side of the handicap space in a similar manner [to Mr. Williams's car] but without issue." (Id. at ¶ 36). There is no allegation that the other vehicle belonged to the white man who approached Deputy Bolin. The amended complaint allegations do not give rise to the inference that the deputies' selective enforcement resulted from an improper racial motive. The equal protection claims against the deputies are dismissed.

"….Deputies Bolin and Kerrigan's motion to dismiss,(Docket Entry No. 18), is denied with respect to Mr. Williams's excessive force claims and is otherwise granted."

75. Because Bolin and Wyrick violated Mr. McCoy's clearly established Fourth Amendment right against unreasonable search and seizure by suing objectively unreasonable, excessive force, clearly established by decades of court precedence, Respondents Bolin and Wyrick are not entitled to qualified immunity under _Saucier_.

## C.  42 U.S.C. §1983 — HARRIS COUNTY'S LIABILITY UNDER _MONELL_

76. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

77. Respondent Harris County a.k.a. Harris County Sheriff's Department is liable to Petitioner, Mr. McCoy because Mr. McCoy's constitutional rights were violated due to Harris County's official policies, unofficial customs, patterns of practice, and conscious indifference to Mr. McCoy's rights.  Furthermore, policymakers, particularly Respondent Gonzalez, within the Harris County Sheriff's Department ratified Bolin and Wyrick's actions that form the basis of Mr. McCoy's 42 U.S.C. §1983 claim against Harris County a.k.a. Harris County Sheriff's Department.

78. In order to hold a municipality such as Harris County a.k.a. Harris County Sheriff's Department liable under 42 U.S.C. §1983, a petitioner must demonstrate that the constitutional deprivation was the product of a policy or custom of the local governmental unit. See, e. g., _Pembaur v. Cincinnati_, 475 U.S. 469 (1986).  The petitioner must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. See _Monell v. Department of Soc. Svcs._, 436 U.S. 658 (1978).

79. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." _Connick v. Thompson_, 131 S. Ct. 1350, 1359 (2011).  A policy of inaction may also be a municipal policy within the meaning of _Monell_. See, e.g., _Long v. County of Los Angeles_, 442 F.3d 1178 (9th Cir. 2006).  A choice among alternatives by a municipal official with final decision-making authority may serve as the basis of municipal liability. See _Pembaur v. City of Cincinnati_, 475 U.S. 469 (1986).  Ratification

of the decisions of a subordinate by an official with final decision-making authority can also be a policy for purposes of municipal liability under §1983.  See *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).  The following official policies, unofficial customs, persistent practices, and official ratifications have been promulgated within the Harris County Sheriff's Office:

a.  Harris County a.k.a. the Harris County Sheriff's Department has an official policy or unofficial custom to justifying the unlawful arrests without probable cause based on the allegations in the filed criminal complaint.  Those allegations take on the form of particular offenses such as resisting arrest, evading arrest, and interfering with public duties to name a few.

b.  As mentioned at item #67 above, over 40 examples of this conduct are clearly enumerated, with specificity, in a previous lawsuit in which Bolin is one of the Respondents – the very same Bolin in this matter.  See *Williams v. Bolin*, No.4:23-cv-00302, First Amended Complaint, Doc. 5, at 11-40 (S.D.T.X. Feb. 23, 2023).

c.  Harris County a.k.a. Harris County Sheriff's Department has an official policy or unofficial custom of systemic unwillingness to address the use of excessive force by its deputies, which Gonzalez ratifies, as described in the June 9, 2009, Department of Justice ("DOJ") Memorandum.  Final policymaker Gonzalez has actual knowledge of the admonitions and recommendations within the 2009 DOJ Memorandum and understands that the 2009 DOJ Memorandum described the systemic violation of the constitutional rights of citizens within Harris County.

This memorandum entitled as "Investigation of the Harris County Jail" ("2009 DOJ Memorandum").

"**a.** Of the many constitutional deficiencies identified by the DOJ, two are relevant to this case: (1) Harris County permitted its employees to use significant force without having measures in place that would enable it to review the propriety of such uses of force; and (2) jail supervisors approved officer' use of force without investigating the need for that force. The DOJ referred to these deficiencies as "systemic." Harris County has made no effort to change its policies, customs, or practices since the issuance of the 2009 DOJ Memorandum, demonstrating a policy or custom of enabling the use of excessive force. The policymakers in Harris County consciously disregarded the admonitions and recommendations in the 2009 DOJ Memorandum, which was a moving force in this incident.

"**b.** Since the 2009 DOJ Memorandum, Harris County has been the subject of thousands of excessive force complaints, including over 3000 excessive force allegations made against Harris County in 2015 alone (nearly 10 per day). After investigating itself in each of these complaints, Harris County made virtually no findings of unjustified use of force, fired or suspended very few officers, and made no changes to training, discipline, or supervision. When Harris County investigates its own employees and finds no wrong-doing, its policymakers are condoning the practices that were investigated and demonstrating its official policy of allowing those practices to continue.

"**c.** In June 2011, Harris County sheriff deputies used excessive force when they incorrectly raided the home of Travis Prespentt, attacking him and injuring him. Harris County made no effort to change its policies, customs, or practices in the aftermath of that incident. Harris County demonstrated its conscious indifference to the rights of suspects after that

incident when Assistant Chief Deputy Mark Herman, spokesman for the policy makers within Harris County, stated to the Houston Chronicle that "these things happen."

"**d.**  In October 2015, two Harris County sheriff deputies used excessive force when they seriously beat an inmate, Michael Alaniz.

"**e.**  In May 2016, Harris County sheriff deputies used excessive force against and wrongfully arrested Gilbert Cruz.

"**f.**  In April 2017, Harris County Sheriff deputies used excessive force when they shot and killed Michael Maldonado.

"**g.**  In December 2017, five Harris County detention officers used excessive force when they brutally beat an inmate, Jerome Bartee. Harris County's policies, customs, and practices of excessive force was described in this case. (See Southern District of Texas - Houston Division Case 4:16-cv-02944)

"**h.**  In November 2020, the Sunset Advisory Commission issued a Staff Report ("Report") regarding the Texas Commission on Law Enforcement ("TCOLE"). The Report determined that TCOLE's minimum standards were outdated and inadequate to meet public needs. It is accepted in the policing community in Texas that departments that have widespread and chronic training and oversight deficiencies, such as those cited in the Report, have increased rates of excessive force. Further, it is well known and accepted in the policing community in Texas that departments who hire deputies in jurisdictions that have widespread and chronic training and oversight deficiencies have increased rates of excessive force. The policymakers in Harris County had access to the Report and knew or should have known that using TCOLE minimum standards in hiring,

supervision, discipline, or personnel retention decisions would result in the unacceptable use of excessive force by deputies. Despite this clear knowledge, Harris County had the official policy of using TCOLE minimum standards for hiring, supervision, discipline, and personnel retention decisions regarding patrol deputies like Deputy Hart. Harris County has made no effort to change its policies, customs, or practices since the issuance of the Report, demonstrating a policy or custom of condoning and enabling the use of excessive force and a conscious indifference to the admonitions and recommendations in the Report and the violations of rights that would result."

*Klehm v. Hart, et. al*, No. 4:22-cv-01226, First Amended Complaint, Doc. 18, (S.D.T.X. filed on Mar. 16, 2022).

 

    d.  The final policymakers of Harris County a.k.a. Harris County Sheriff's Department ratified Bolin and Wyrick's violation of Mr. McCoy's Fourth Amendment rights because their official policies, unofficial customs, widespread violative practices, and top-down, wide-spread leadership ratifications fly in the face of Mr. McCoy's United States Constitutional 4th Amendment Rights under 42 U.S.C. §1983 and *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

80. In addition to the support above, it should also be noted in the opinion of *Williams v. Bolin*, 694 F. Supp. 3d 904 (S.D. Tex. 2023), *Monell* liability can be affirmed in certain criteria are met.  In this opinion, it is written that:

"Harris County and Sheriff Gonzalez, in his official capacity, cannot be held vicariously liable for the conduct of their employees or directly liable on the basis of respondeat superior. *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Municipal liability under § 1983 "requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.' " *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting reference omitted); see also *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018)). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "A showing of simple or even heightened negligence will not suffice." Id. at 407, 117 S.Ct. 1382. Instead, it "must amount to an intentional choice, not merely an unintentionally negligent oversight." James, 577 F.3d at 617-18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)).

As the Fifth Circuit has summarized:

> [Fifth Circuit] caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Josep*h, 925 F.3d 209, 214-15 (5th Cir. 2019) (footnotes and citations omitted).

81. Here, not so dissimilar to *Williams*, and as if there was not enough, we now see clear policy, pattern, and practice, including unpublished and unofficial policy, which continue to be ratified by the policymakers, specifically Gonzalez.  Mr. Williams' incident occurred May 22. 2022.  Mr. McCoy's occurred January 11, 2023.  More than additional 40 incidents as listed in *Williams v. Bolin*, No.4:23-cv-00302, First Amended Complaint, Doc. 5, at 11-40 (S.D.T.X. Feb. 23, 2023); all which occurred from when the Petitioner Williams was arrested and assaulted by Bolin and Kerrigan, and when Gonzalez took office at the County Sheriff, to when Mr. McCoy was also arrested and assaulted, and then when a high school senior – African-American Male - experienced the same thing at the hands of Bolin https://youtube.com/shorts/ZUJ7xrZnNUo?si=f9kjUAce0l1WkQpO  .

## D.  VIOLATION OF MR. MCCOY'S FIRST AMENDMENT RIGHTS

82. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

83. Mr. McCoy brings this claim under 42 U.S.C. §1983 for violations of his rights guaranteed under the First ("1st") Amendment to the United States Constitution.

84. To establish a First Amendment retaliation claim under 42 U.S.C. §1983, the plaintiff must demonstrate: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the plaintiff for exercising that right, (3) a retaliatory adverse act, and (4) causation, *McCann v. Moren*o, 2016 Tex. App. LEXIS 7715, *Greer v. Reaux*, 2020 Tex. App. LEXIS 1634.

85. Here, Mr. McCoy shows that the exercise of his 1st Amendment rights was a substantial or motivating factor in the actions of both Bolin and Wyrick.

86. Additionally, to prevail on a 42 U.S.C. 1983 excessive force claim, the plaintiff must show that they were seized and that they suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable. *Cain v. City of Conroe*, 2020 Tex. App. LEXIS 9238; *Aguilera v. Nava*, 2010 Tex. App. LEXIS 5722. The reasonableness of the force used is assessed by considering factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight *§ 10.05 Procedure for Effecting* Arrest; *Lang v. City of Nacogdoches*, 942 S.W.2d 752.

   a. Here, Mr. McCoy used defiant language when he was erroneously "pulled-over" by Wyrick. When, in actuality, Wyrick did not turn on his flashers until Mr. McCoy pulled into the fire station parking lot which is later determined to because for pulling over Mr. McCoy.

   b. Mr. McCoy suffered many (1) injuries as a result of suffering a closed fist face and head beat-down by Bolin and Wyrick. His injuries included but are not limited to broken teeth, dethatched retina, concussion, abrasions, and bruises;

   c. Mr. McCoy's injuries were (2) "directly and only from the use of force that was excessive to the need" which was to coax Mr. McCoy out of his vehicle to conduct a yet more erroneous, targeted, and racially profiled activity.

   d. The force used by both Bolin and Wyrick, the closed fist face and head beat-down used (3) was objectively unreasonable.

87. In this case, the plaintiff must establish that the force used by the defendants was not only excessive but also retaliatory in nature, *Rogers v. Owings*, 2011 Tex. App. LEXIS 3568.

This requires showing that the defendants' actions were motivated by the plaintiff's exercise of 1st Amendment rights and that the force used was objectively unreasonable under the circumstances.

88. Here, in viewing Wyrick's dashcam and listening to Mr. McCoy's cell phone recording, it appears that both Bolin and Wyrick's level of frustration went from zero to sixty in a matter of a couple of minutes, as a result of Mr. McCoy's defiant speech.  The beat-down that Mr. McCoy received at the hands of Bolin and Wyrick was clearly objectively unreasonable under the circumstances.

89. Bolin and Wyrick were motivated by Mr. Moy's defiant speech and the excessive force they asserted was objectively unreasonable.

### E.  VIOLATION OF MR. MCCOY'S EIGHTH AMENDMENT RIGHTS

90. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

91. Mr. McCoy brings this claim under 42 U.S.C. §1983 for violations of his rights guaranteed under the of the Eighth ("8th") Amendment to the United States Constitution. Mr. McCoy alleges that Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez, acting under color of state law, deprived Mr. McCoy of rights secured by the United States Constitution.

92. To establish an 8th Amendment excessive force claim under 42 U.S.C. 1983, the Petitioner must demonstrate: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the plaintiff for exercising that right, (3) a retaliatory adverse act, and (4) causation.

a.  Specific constitutional rights (1), as articulated throughout this *Original Complaint*, were violated by the Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez.

b.  It is certain that the actions of these particular Respondents were retaliatory (2) as the actions were racially motivated, prejudicial, racially profiled, and/or targeted by Wyrick and ratified by all the others.  Initially, Mr. McCoy was a free citizen exercising his right to Freedom of Movement, under the *Privileges and Immunities Clause* of the United States Constitution.  Because of the prejudicial, racially profiled, and/or targeted behavior of Bolin and Wyrick, the initial right that Mr. McCoy was exercising was violated.  The series of events that occurred thereafter, continue a long list of constitutional violations against Mr. McCoy.

c.  The ultimate retaliatory adverse act (3) committed by Bolin and Wyrick and ratified by Harris County a.k.a. Harris County Sheriff's Department and Gonzalez was the wrongful arrest which followed the horrible display and exertion of excessive force, then the wrongful arrest conjured thereafter.

d.  Lastly, the causation (4) of the violation was the wrongful arrest then excessive and lengthy incarceration of approximately three and one-half months for a Class C, non-violent misdemeanor.

93. Mr. McCoy also shows that Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez, acting under color of state law, deprived Mr. McCoy of rights secured by the United States Constitution and that these Respondents' conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the Respondents' conduct does exist.

94. Mr. McCoy's claim for a violation of 8th Amendment rights, coupled with the use of excessive force and wrongful arrest, demonstrates that the Respondents listed in this section were motivated by Mr. McCoy's exercise of protected rights and that the force used was objectively unreasonable.

95. The fact that Mr. McCoy was in jail for at least three and a half months for a traffic misdemeanor, turned resisting arrest further underscores the need to scrutinize the defendants' actions under the 8th Amendment framework.

## F. VIOLATION OF MR. MCCOY'S EQUAL PROTECTION RIGHTS

96. Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

97. Mr. McCoy asserts a violation of the *Equal Protection Clause*, alleging that he was treated differently from others similarly situated without a reasonable basis. *Rivera v. Sonnenschein*, 2022 Tex. App. LEXIS 3665; *Abbott v. City of Paris*, 429 S.W.3d 99.

98. Mr. McCoy can demonstrate: (1) that [he] were treated differently from others similarly situated, and (2) that the differential treatment was without a reasonable basis . *Rivera v. Sonnenschein*, 2022 Tex. App. LEXIS 3665; *Five Corners Improvement Dist. v. JKO Enters.*, LLC, 2021 Tex. App. LEXIS 3398.

99. The *Equal Protection Clause* of the 14th Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which essentially means that all persons similarly situated should be treated alike. *Williams v. Davis*, 628 S.W.3d 946; *Soliz v. Saenz*, 779 S.W.2d 929.

100.    Mr. McCoy was adversely treated in comparison to the proportionate travelers on the road that day. Considering that the racial demographic make-up of the Houston

Metropolitan area, according to the Greater Houston Partnership statistical study, published in 2020, cites that 17% of the region is African American.[5]

101.      It would stand to reason that Bolin and Wyrick did not harass, intimidate, target, and racially profile approximately 2 out of every 10 drivers on their "beat" on January 11th, 2023.

102.      Mr. McCoy is a member of a protected class – he is African American.  The acts against him by Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez, acting under color of law certainly had a disproportionate impact and discriminatory intent. _Rivera v. Sonnenschein_, 2022 Tex. App. LEXIS 3665; _Sonnenschein v. Rivera_, 2023 Tex. App. LEXIS 8928.

103.      There was no reasonable basis for the Respondents named in this section and Mr. McCoy has provided sufficient facts to support this claim.

**G.  VIOLATION OF MR. MCCOY'S FOURTEENTH AMENDMENT RIGHTS**

104.      Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

105.      Mr. McCoy brings this claim under 42 U.S.C. §1983 for violations of his rights guaranteed under the of the Fourteenth ("14th") Amendment to the United States Constitution.  Mr. McCoy alleges that Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez, acting under color of state law, deprived Mr. McCoy of rights secured by the United States Constitution.

106.      To establish a claim under 42 U.S.C. §1983, the Petitioner must prove two essential elements: (1) the violation of a right secured by the Constitution or laws of the

---

[5] 5, Greater Houston Partnership (2020), https://www.houston.org/sites/default/files/2020-07/Greater%20Houston%20Basic%20Demographics%207-20.pdf

United States, and (2) that the alleged deprivation was committed by a person acting under color of state law *Johnson v. Calhoun County Indep. Sch. Dist*., 943 S.W.2d 496; *T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9.  The 14th Amendment's Due Process Clause is intended to prevent the government from abusing its power or using it as an instrument of oppression.  *Johnson v. Calhoun County Indep. Sch. Dist.*, 943 S.W.2d 496; *Anthony v. State*, 209 S.W.3d 296.

107.    The Petitioner must also show that the deprivation was committed by a person acting under color of state law.  State employment is generally sufficient to render the defendant a state actor *Mitchell v. Amarillo Hosp. Dist*., 855 S.W.2d 857.  A defendant in a 1983 suit acts under color of state law when they abuse the position given to them by the state, typically while acting in their official capacity or exercising their responsibilities pursuant to state law. *Mitchell v. Amarillo Hosp. Dist*., 855 S.W.2d 857.

108.    Here, Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez all severally and jointly acted on concert in depriving Mr. McCoy of his United States Constitutional protections including his rights under the First, Fourth, Eighth, and Fourteenth Amendments, plus protections under the Equal Protection Clause and the Privileges and Immunities Clause.

109.    Respondents Harris County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez all acted under the color of law in their individual and official capacities.  Each of these Respondents are either/or municipalities and or county departments that act to create policy, the policymakers themselves, and/or are agents of said municipalities.

110.    Mr. McCoy's 14th Amendment rights were violated by the Respondents Harris

County a.k.a. Harris County Sheriff's Department, Bolin, Wyrick, and Gonzalez.

## H. ASSAULT & FALSE IMPRISONMENT OF MR. McCOY

111.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous

paragraphs, inclusive, with regard to all causes of action.

### ASSAULT

112.    Mr. McCoy asserts the claim of Assault upon his person by Respondents

Lonestar, Kamil, and John Doe.

113.    The elements of assault, in Texas, are defined in the *Sec. 22.01. Assault.* A person

commits an assault if they: (1) intentionally, knowingly, or recklessly cause bodily injury

to another, including the person's spouse; (2) intentionally or knowingly threaten another

with imminent bodily injury, including the person's spouse; or (3) intentionally or

knowingly cause physical contact with another when the person knows or should

reasonably believe that the other will regard the contact as offensive or provocative

*Loaisiga v. Cerda*, 379 S.W.3d 248; *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d

636; *Jones v. Shipley*, 508 S.W.3d 766.

114.    In the context of civil assault, the elements mirror those of criminal assault. This

means that the same criteria apply: causing bodily injury, threatening imminent bodily

injury, or causing offensive or provocative physical contact. *Loaisiga v. Cerda*, 379

S.W.3d 248; *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636; *Jones v. Shipley*,

508 S.W.3d 766.

115.    In Texas, the intentional tort exception under the Texas Tort Claims Act bars

claims arising out of assault, battery, false imprisonment, or any other intentional tort

committed by public employees. *DeRouen v. Falls County Sheriff's Dep't*, 2008 Tex. App. LEXIS 5479; *Simmonds v. TDCJ*, 2010 Tex. App. LEXIS 1338.

116.    Here, Respondents Lonestar, Kamil, and John Doe are NOT public employees.

117.    Further, Lonestar and Kamil are John Doe's employer.  Therefore, since Joe Doe as acting within the scope of his employment, they are liable under the  theory of Respondeat Superior.

118.    On January 11th, 2023, during the course of a ruse traffic stop, a tow truck driver in a truck with signage identifying it as belonging to an d working on behalf of Lonestar Auto Service arrived at the scene.

119.    The tow truck driver is identified in the *Original Complaint* as John Doe.  John Doe is identified as a large white male, with red-basketball shorts.

120.    Upon Mr. McCoy being violently dragged out of his vehicle, then beaten by Bolin and Wyrick,  John Doe too k it upon himself to "assist" in restraining and detaining Mr. McCoy.

121.    John Doe placed his knee in Mr. McCoy's back, asserted extreme pressure which caused pain and injury to Mr. McCoy, in addition to the pain and injury having been exerted by Wyrick and Bolin.

122.    John Doe did either (1) intentionally, knowingly, or recklessly caused bodily injury to another – Here, Mr. McCoy.  And (3), John Doe intentionally or knowingly caused physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

123.    Mr. McCoy can establish that John Doe was acting under color of state law when assisting the police.  This can be shown because the government (Wyrick and Bolin)

knew of, and acquiesced in, John Doe's conduct, and that the tow truck driver intended to

assist law enforcement efforts rather than furthering their own ends.   This can all be

viewed in the dashcam video (tendered to the Clerk of the Court).

124.     Since John Doe was performing a public duty and acting under the color of law,

such as assisting in the enforcement of general laws, his actions may be attributable to the

state, making them liable under 42 U.S.C. §1983.

125.     John Doe's actions also make him liable for the deprivation of Mr. McCoy's

constitutional rights.

126.     The force used was excessive and objectively unreasonable, and John Doe was

effectively acting as an agent of the state during the incident.

**FALSE IMPRISONMENT**

127.     Mr. McCoy asserts a claim for false imprisonment upon his person by

Respondents Lonestar, Kamil, and John Doe.

128.     John Doe, a tow truck driver at the scene, assisted the police in restraining and

detaining Mr. McCoy during an arrest.  Under Texas law, the essential elements of false

imprisonment are: (1) willful detention, (2) without consent, and (3) without authority of

law. _H.E.Butt Grocery Co. v. Saldivar_, 752 S.W.2d 701.

129.     Liability for false imprisonment extends beyond those who willfully participate in

detaining the complaining party to those who request or direct the detention. _Murphy_

_USA, Inc. v. Rose_, 2016 Tex. App. LEXIS 10829; _Ross v. Bank of Am._, 2004 Tex. App.

LEXIS 5147.

130.     Establishing a claim for false imprisonment, Mr. McCoy demonstrates that the

John Doe willfully detained him without his consent and without legal authority.   This

can be viewed on the dashcam video.  In Texas, a private citizen, including a tow truck driver, may make a warrantless arrest only if an offense is committed in their presence or view, and the offense constitutes a felony or an offense against the public peace.

131.    Here, Bolin and Wyrick did not need additional assistance because Mr. McCoy, while vocal, was not armed, not physically resisting arrest, and was not a flight risk at the time John Doe jumped in and played cop.

132.    John Doe did not meet the statutory requirements listed in #130 above and therefore, he lacked legal authority to falsely imprison Mr. McCoy.

133.    Furthermore, Mr. McCoy can show that John Doe's actions were not merely incidental but that he actively participated in the detention.

134.    In this case, John Doe's actions were a willful participation in the detention.  This would satisfy the first element of false imprisonment.  Additionally, Mr. McCoy did not consent to the detention; therefore, the second element of false imprisonment is met.

135.    Concluding that John Doe's actions went beyond mere reporting and he  actively participated in detention and can be held liable for false imprisonment under Texas law. This includes his employer, Respondent Lonestar, and the owner of Lonestar, Respondent Kamil, under the theory of Respondeat Superior.

## VIII.   DAMAGES

136.    Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

137.    As a result of Respondents statutory and constitutional violations, Petitioner has suffered traumatic and permanent damages and injuries.

138.    Mr. McCoy has broken teeth, emotional distress, lingering symptoms as a result of a detached retina and also concussion.

139.      Mr. McCoy has accrued medical bills due to the injuries he sustained at the hands of all of the Respondents.

140.      Mr. McCoy now suffers exasperated emotional health issues and distrust of law enforcement as a result of this incident perpetrated by all Respondents.

## IX.      ATTORNEY'S FEES AND COSTS

141.      Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

142.      Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Petitioner asserts right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if he prevails.

## X.      RELIEF REQUESTED

143.      Petitioner hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all facts, claims, allegations, and causes of actions.

144.      Petitioner seeks the reasonable and necessary attorney's fees incurred in connection with this claim under *Tex. Civ. Prac. & Rem. Code Section 38.001.*

145.      Under Texas law, to recover attorney's fees, the Petitioner must prove that the attorney's fees were reasonable and necessary for the prosecution of the case. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex.1997). A Petitioner must ask the fact-finder to award a specific dollar amount, not merely an amount as a percentage of judgment. Id. at 819. Texas courts, like the Fifth Circuit, generally use the lodestar method for calculating reasonable attorney's fees. See *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782–83 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); see also *Guity v. C. C.I. Enters., Co.*, 54 S.W.3d 526, 528 (Tex.App.-[1st Dist.] 2001, no pet.) (stating that in determining the

reasonableness of attorney's fees, the fact finder must be guided by a specific standard, and that this standard is substantially the same under Texas and federal law); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995) (applying lodestar method with respect to attorney's fees in connection with federal claims). However, under Texas law, strict reliance on the lodestar method of calculation is not required if the Petitioner can otherwise demonstrate that the fees sought are reasonable. See e.g., *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 240–41 (Tex.App.-San Antonio 2001, pet. denied). "The first step under the lodestar method is to determine the "lodestar" amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See La. Power & Light Co.,* 50 F.3d at 324. In the second step of the lodestar method, a court considers whether the lodestar figure should be adjusted upward or downward depending on its analysis of additional factors. *Id.* The Texas Supreme Court has identified eight factors to be used by the fact-finder to determine the reasonableness of the fees[6]. *Arthur Anderson & Co*., 945 S.W.2d at 818. If these factors are accounted for in determining the lodestar amount, they should not be considered when making adjustments. *Guity*, 54 S.W.3d at 529.

146.    For these reasons, Petitioner prays for judgment against Respondents, any or all of them, for following:

  a.  Actual damages;

  b.  Pre-judgment and post-judgment interest;

---

[6] These factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing their services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Anderson & Co.,* 945 S.W.2d at 818.

c.  Punitive and exemplary damages against Respondent in an amount to be determined and as allowed by the Court. *See Smith v. Wade*, 461 U.S. 30 (1983);

d.  Attorneys' fees;

e.  Costs of Court; and

f.  Such other and further relief as the Court deems just and equitable including appropriate.

## XI.    JURY DEMAND

147.    Petitioner respectfully demands trial by jury and has tendered the appropriate fee for the same.

148.    **WHEREFORE**, Petitioner respectfully requests Respondent be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Respondent.

149.    Petitioner further respectfully request that he be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No. 0403083
Admitted:
**U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas  77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas  77094

Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PETITIONER**